**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RAY HOMSI, Derivatively on Behalf of Nominal Defendant METHODE ELECTRONICS, INC., | |
| Plaintiff, | Case No. |
| v. | |
| DONALD W. DUDA, RONALD L.G. TSOUMAS, MARK D. SCHWABERO, BRIAN J. CADWALLADER, THERESE M. BOBEK, BRUCE K. CROWTHER, DARREN M. DAWSON, JANIE GODDARD, MARY A. LINDSEY, ANGELO V. PANTALEO, LAWRENCE B. SKATOFF, AND WALTER J. ASPATORE, | |
| Defendants, | **JURY TRIAL DEMANDED** |
| and | |
| METHODE ELECTRONICS, INC., | |
| Nominal Defendant. | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Ray Homsi ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Methode Electronics, Inc. ("Methode" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and contribution for Violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Methode with the U.S.

1

Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.  NATURE AND SUMMARY OF THE ACTION

1.  Methode designs, engineers, and manufactures custom-engineered solutions for Original Equipment Manufacturers ("OEMs"). The Company's products are found in the end markets of transportation, cloud computing infrastructure, construction equipment, consumer appliances, and medical devices. Methode's automotive segment generates the majority of the Company's revenues. For the fiscal year ended April 30, 2022, the Automotive Segment accounted for over 67% of Company net sales.[1] The Automotive Segment supplies electronic and electro-mechanical devices and related products such as integrated center consoles, hidden switches, ergonomic switches, transmission lead-frames, LED-based lighting, and sensors, to automobile OEMs or their suppliers.

2.  In 2020, Methode shifted its production away from a relatively low mix, high volume production of relatively standardized center consoles for a few vehicle manufacturers such as General Motors to a high mix, low volume production of more specialized components for a wider variety of vehicle manufacturers, in particular manufacturers of electric vehicles ("EVs"). Although the change would initially result in lower unit sales, Defendants (defined below) claimed that these lost sales would be offset by higher margins on the more specialized components sold by the Company, as well as other OEM awards secured by the Company in the EV space. Defendants also praised the strategy shift as lowering concentration risk because it allowed Methode to diversify.

---

[1] The Company's fiscal year ends on the Saturday closest to April 30 of the calendar year.

3.     For approximately two years, the Company repeatedly represented that Methode's transition into new business opportunities, in particular in the EV space, and away from its legacy center console business was progressing well, including the retooling of its key Monterrey facility to support the transition to building new, more specialized components and to service new EV program awards.

4.     The truth began to emerge on March 9, 2023, when Methode revealed the Company's Automotive Segment saw net sales of $176.5 million, a decline of 9.7% from the year ago period, and income from operations of $18.7 million, a decline of 23.7% from the year ago period. In a corresponding earnings call, Defendant Donald W. Duda ("Duda") nonetheless maintained that new EV program awards received by the Company will "not only replace the sunsetting center console business, but to grow the business at the [6% sales CAGR] that we have targeted."  On this news, the Company's stock price fell $3.92 or 8.23%, to close at $43.69 on March 9, 2023.

5.     Then, on June 12, 2023, Methode issued a press release announcing guidance for net sales: $1,183 million for fiscal 2023, $1.15 billion to $1.2 billion for fiscal 2024, and $1.25 billion to $1.35 billion for fiscal 2025, the latter of which was which was below the Company's recently reaffirmed 6% 3-year sales CAGR. The Company signaled continued deterioration "due to additional costs to support new program launches and the impact from program roll-offs," among other factors. On this news, the Company's stock price fell $8.17 or 18.1%, to close at $36.90 per share on June 13, 2023, on unusually heavy trading volume.

6.     Shortly after, on June 22, 2023, Methode announced financial results for its full year 2023 revealing the Company had achieved only $1,179.6 million in net sales, below the preliminary results of $1,183 million provided just ten days prior. During the corresponding

earnings call, when asked to describe the costs of new product launches and efforts underway to retool the Company's factories, Defendant Duda maintained such costs had been "factored into the guidance" and indicated upgrades were proceeding according to plan. On this news, the Company's stock price fell $3.48 or 9.28%, to close at $34.04 per share on June 22, 2023, on unusually heavy trading volume.

7.      On September 7, 2023, Methode disclosed "operational inefficiencies" in the Company's North American operations and accelerated expenses related to new program launches had negatively impacted earnings and were expected to linger. The Company lowered expected 2024 net sales to a range of $1.14 billion to $1.18 billion (down from $1.15 billion to $1.2 billion) and slashed expected diluted EPS to a range of $0.80 to $1 (down from $1.55 to $1.75). Nonetheless, Defendant Duda was quoted in the corresponding press release stating, "corrective action plans are already in place" and "we remain on track with the 20-plus new program launches that we previously announced." On this news, the Company's stock price fell $6.67 or 22.23%, to close at $23.33 per share on September 7, 2023, on unusually heavy trading volume.

8.      Then, on December 7, 2023, Methode revealed that the automotive segment suffered a $61.5 million loss from operations during the quarter and revealed operational challenges at the Company's Monterrey facility were far greater than previously reported as the Company's vaunted EV awards suffered launch setbacks and significant cost overruns. The release also disclosed a $56.5 million goodwill impairment in the Company's North American and European Automotive Reporting Units and yet again lowered Methode's 2025 revenue guidance, this time to $1.15 billion to $1.25 billion (down from $1.25 billion to $1.35 billion). On this news, the Company's stock price fell $2.26 or 9.27%, to close at $22.13 per share on December 7, 2023, on unusually heavy trading volume.

9.      Finally, on March 7, 2024, Methode disclosed its Automotive Segment had suffered a $11 million loss from operations in the quarter. The Company withdrew all prior guidance due in substantial part to the "operational challenges" at the Monterrey facility and stated that prior statements regarding the guidance should no longer be relied upon.  On this news, the Company's stock price fell $6.55 or 31.1%, to close at $14.49 per share on March 7, 2024, on unusually heavy trading volume.

10.      These revelations precipitated the filing of a securities class action in the United States District Court Northern District of Illinois, Eastern Division, against Methode and certain of the Defendants named herein, captioned *Salem v. Methode Electronics, Inc., et al.,* Case No. 1:24-cv-07696 (the "Securities Class Action").

11.      Plaintiff did not make a litigation demand prior to filing this action because such action would have been futile based upon the composition of the Board and the actions taken by the Board, as alleged herein.

## II.    JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332.  Subject matter jurisdiction is proper because the amount in controversy exceeds $75,000, exclusive of interest and cost, and the named Plaintiff and Defendants are citizens of different states.  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

2.      This Court may exercise personal jurisdiction over the Individual Defendants (defined below) because Methode is headquartered in this District.

12.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District,

and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## III.     PARTIES

**Plaintiff**

13.     Plaintiff Ray Homsi purchased shares of Methode stock in 2015 and has continuously owned his Methode stock since that date.  He currently owns 600 shares. He is a resident of Ohio.

**Nominal Defendant**

14.     Nominal Defendant Methode is a Delaware corporation with its principal executive offices located at 8750 West Bryn Mawr Avenue, Suite 1000, Chicago, Illinois, 60631-3518.  The Company's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "MEI."

**Defendants**

15.     Defendant Donald W. Duda ("Duda") was Chief Executive Officer ("CEO"), President, and a director at Methode from May 2004 until January 2024. He is named as a defendant in the Securities Class Action. He is a citizen of Wisconsin.

16.     Defendant Ronald L.G. Tsoumas ("Tsoumas") was the Chief Financial Officer ("CFO") of Methode from March 2018 until July 2024.  He is named as a defendant in the Securities Class Action. He is a citizen of Illinois.

17.     Defendant Darren M. Dawson ("Dawson") has served as a director of the Company since 2004. He is a citizen of Kanas.

18.     Defendant Brian J. Cadwallader ("Cadwallader") has served as a director of the Company since February 2018. He is a citizen of Florida.

19.     Defendant Mark D. Schwabero ("Schwabero") has served as a director of the Company since June 2019. He is a member of the Audit Committee. He is a citizen of Illinois.

20.     Defendant Bruce K. Crowther ("Crowther") has served as a director of the Company since June 2019. He is a citizen of Illinois.

21.     Defendant Angelo V. Pantaleo ("Pantaleo") has served as a director of the Company since December 2019. He is a member of the Audit Committee. He is a citizen of Florida.

22.     Defendant Mary A. Lindsey ("Lindsey") has served as a director of the Company since March 2020. She is the Chair of the Audit Committee. She is a citizen of New York.

23.     Defendant Therese M. Bobek ("Bobek") has served as a director of the Company since March 2020. She is a member of the Audit Committee. She is a citizen of Florida.

24.     Defendant Janie Goddard ("Goddard") has served as a director of the Company since March 2021. She is a member of the Audit Committee. She is a citizen of New York.

25.     Defendant Lawrence B. Skatoff ("Skatoff") served as a director of the Company from 2004 until September 2023. He is a citizen of Florida.

26.     Defendant Walter J. Aspatore ("Aspatore") served as a director of the Company from 2008 until September 2024. He is a citizen of Florida.

27.     Defendants Duda, Tsoumas, Dawson, Cadwallader, Schwabero, Crowther, Pantaleo, Lindsey, Bobek, Goddard, Skatoff, and Aspatore, are sometimes referred to hereinafter as the "Individual Defendants."

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

28.     By reason of their positions as officers, directors, and/or fiduciaries of Methode and because of their ability to control the business and corporate affairs of Methode, at all relevant times, the Individual Defendants owed Methode and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage

7

Methode in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Methode and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Methode and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

29.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Methode, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Methode, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

30.     To discharge their duties, the officers and directors of Methode were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Methode were required to, among other things:

    (a)    Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    (b)    Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

    (c)    Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

    (d)    When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Background

31.     Methode designs, engineers, and manufactures custom-engineered solutions for OEMs. The Company's products are found in the end markets of transportation, cloud computing infrastructure, construction equipment, consumer appliances, and medical devices.

32.     The Company breaks its operating results into four reportable segments: (i) Automotive; (ii) Industrial; (iii) Interface; and (iv) Medical. Methode's Automotive segment (the "Automotive Segment") generates the majority of the Company's revenues. For the fiscal year ended April 30, 2022, the Automotive Segment accounted for over 67% of Company net sales. The Automotive Segment supplies electronic and electro-mechanical devices and related products – such as integrated center consoles, hidden switches, ergonomic switches, transmission lead-frames, LED-based lighting, and sensors – to automobile OEMs or their suppliers.

33.     In November 2010, Methode received a significant boost when the Automotive Segment was awarded the GM center console program. Starting in 2014, the program was projected to add $100 million in revenue per year. The award contributed to the critical importance of center console production to the Company's business, revenue, and prospects. For example, for fiscal year 2016 (the year that the GM award achieved full production) sales to GM represented approximately 50% of the Company's consolidated net sales, which consisted primarily of sales to GM of integrated center consoles for use in trucks and SUVs. The Company's center console production was substantially done out of its Monterrey, Mexico facility.

34.     By 2020, Methode began transitioning away from its reliance on traditional integrated center stack units due to changes in automotive trends and technologies. Specifically, car manufacturers had begun using fewer designs featuring traditional buttons and knobs and instead used displays with a greater focus on integrating control functions into the display itself,

such as touch screen infotainment applications. As a result, over the next several quarters the Company shifted its production away from a relatively low mix, high volume production of relatively standardized center consoles for a few vehicle manufacturers such as GM to a high mix, low volume production of more specialized components for a wider variety of vehicle manufacturers, in particular manufacturers of EVs. Although the change would initially result in lower unit sales, defendants claimed that these lost sales would be offset by higher margins on the more specialized components sold by the Company, as well as other OEM awards secured by the Company in the EV space. Defendants also praised the strategy shift as lowering concentration risk because it allowed Methode to diversify away from its dependence on GM.

35.     On a March 2020 conference call, Defendant Duda highlighted this transition, stating that Methode planned to phase out integrated center stack production over the next five years as it ramped up its EV offerings. Defendant Duda assured investors that "going forward, our higher-margin product mix will more than offset any potential decline in operating income from what we must now consider a legacy product." Defendant Duda pointed to the $105 million in new business the Company had booked so far in the year, which he claimed provided "great comfort that our strategy there [has begun] to pay off."

36.

**B.      The Individual Defendants Cause the Company to Issue Materially Misleading Statements**

37.     On June 23, 2022, the Individual Defendants caused Methode to issue a press release announcing the Company's financial results for its fourth fiscal quarter and full year 2022 (the "4Q/FY22 Release"). Therein, the Company stated that the Automotive Segment had $194.3 million in net sales and $17.2 million in income from operations for the quarter. For fiscal 2022, the 4Q/FY22 Release stated that the Company had $1.16 billion in consolidated net sales and

$102.2 million in net income. The 4Q/FY22 Release reaffirmed the Company's fiscal 2023 guidance of a diluted earnings per share ("EPS") range of $2.70 to $3.10. The 4Q/FY22 Release further announced a 6% 3-year organic sales CAGR. Defendant Duda was quoted in the 4Q/FY22 Release as stating, in relevant part:

> [W]e booked another quarter of awards with over $100 million in annual sales, with approximately 90% in EV applications, and delivered record sales for the full year.
>
> *          *          *
>
> [W]e expect continued sales growth as well as renewed earnings growth in fiscal 2023.
>
> *          *          *
>
> This [6% CAGR sales] target is enabled by our strong run of program awards over the past two years, particularly with electric vehicles.

38.     On June 23, 2022, the Individual Defendants caused Methode to hold an earnings conference call with analysts and investors to discuss Methode's fourth fiscal quarter and full year 2022 results hosted by Defendants Duda and Tsoumas. In his prepared remarks, Defendant Duda stated that the Company "had another very strong quarter with over $100 million in program awards," with 90% being for EV applications. Defendant Duda brushed off supply chain challenges and market disruptions that had temporarily impacted earnings, stating he was "confident" that "Methode is positioned to mitigate these pressures and deliver sales and earnings growth for fiscal 2023." Further, Defendant Duda announced that "[w]ith the strong award pipeline for the past 2 years and the effort Methode has made to diversify its product portfolio . . . we are now confident to announce a 3-year organic sales compounded annual growth rate target of 6%." He represented that "[t]his target demonstrates that our business model is not just healthy, but as prospering from the strategic step that we have taken to grow the business." Defendant Duda added: "Looking beyond 2023, we are confident in our strategy and our award pipeline continues

to be robust," which he stated, "firmly puts Methode on a path to deliver on our 6% compounded annual sales growth target over the next 3 years."

39.     In his opening remarks during the conference call, Defendant Tsoumas stated that the anticipated growth at the midpoint of Methode's 2023 revenue guidance range "considers the impact of the GMT1 [center console] roll-off" that had "over $100 million" in sales in fiscal year 2022. Defendant Tsoumas further stated that the 6% 3-year sales CAGR was "based on the strong bookings we have realized over the past 2 fiscal years" and "takes into account the anticipated rolloff of the relevant programs and reinforces our organic growth strategy is putting the company on a nice future organic growth trajectory."

40.     On June 23, 2022, the Individual Defendants caused Methode to file with the SEC a Form 10-K for the fiscal year ended April 30, 2022, which was signed by the Individual Defendants. The Form 10-K contained the financial information regarding Methode's fourth fiscal quarter and full year 2022 financial results contained in the 4Q/FY22 Release.

41.     On August 10, 2022, Defendants Duda and Tsoumas participated in the JPMorgan Auto Conference. During his prepared remarks to investors, Defendant Duda highlighted Methode's "vertically integrated manufacturing locations in North America," and elsewhere, which purportedly provided a "cost-effective footprint . . . strategically located in proximity to key customers." He praised the Company's "vertically integrated manufacturing with world-class quality," which had allowed Methode to "grow by capitalizing on EV and other market growth trends" and giving it "confidence to guide to a 3-year annual growth rate target of 6%."

42.     Later during his prepared remarks, Defendant Duda singled out the Company's transition from the GM center console business to its launch of new EV applications, stating the

EV sector provided a "definite organic growth tailwind for Methode," and further stating in pertinent part:

> In EV, it is quickly growing and approaching half of our product sales into EV applications.
>
> Consequently, Methode is a clear opportunity to incrementally grow our content per vehicle with the industry's transition to EVs. *As I mentioned earlier, our content in EV can be more than double our content on an internal combustion vehicle. EV is a definite organic growth tailwind for Methode. In addition to driving growth, our EV as well as our commercial vehicle businesses have helped further our customer diversification*.
>
> While General Motors has been and is expected to continue to be a good customer that fueled Methode's historical growth in recent years, we have strategically and systematically broadened our customer base. Our non-GM business grew to – grew to 77% of our fiscal 2022 sales, up from 50% several years ago. Consequently, we have become less exposed to the roll-off of any specific customer program.

43.     When asked what provided the Company's "confidence" in its 3-year 6% sales CAGR, Defendant Tsoumas replied:

> Regarding the EV proliferation all over the globe, *we we're investing a lot of capital to increase our capabilities and capacity at – in all of the – our geographic [regions]* that they serve as a lot of our customers prefer suppliers, especially now with supply chain to be closer to the customer.
>
> *             *             *
>
> So the combination of all those things gives us confidence that we're making the right investments to reap as much growth as we can on a go-forward basis.

44.     Later during the conference, Defendants elaborated on the purportedly high-quality output offered by the Company's manufacturing facilities. Defendant Duda stated: "We have – in North America, we have our manufacturing campus in Monterrey, Mexico," as well as two other manufacturing facilities with the same high-quality controls in place. He continued by highlighting the purportedly "low" cost of ensuring quality at Company facilities, stating in pertinent part:

> *I think this is very important. We employ the same manufacturing system in the same quality system. The language may change on the storyboard, but the system is the same*.

So a customer that wants that maybe starts purchasing from us in the United States and then wants an overseas supply, they have audit facility, but they'll see the same thing that they see in the United States. ***And I think that's been part of our success. And if your cost of quality is low, you throw them more to the bottom line***.

45.     Defendant Tsoumas added: "[A]uto is 67%, 68% of our business. With those campuses that are – have all the rigor and auto hardened, we also manufacture the rest of our products for the most part there as well," which "kind of get a free ride from a quality and then you get into the utilization of the facility and all that." Defendant Tsoumas further stated: "So we really feel good about our geographic footprint and then within that footprint, how we're structured to manufacture all of our products," which included most notably the Company's purported growth driver: new EV program awards.

46.     On September 1, 2022, the Individual Defendants caused Methode to issue a press release announcing the Company's financial results for its first fiscal quarter of 2023 (the "1Q23 Release"). The 1Q23 Release stated that the Automotive Segment had $176.6 million in net sales and $14.7 million in income from operations for the quarter. The 1Q23 Release reaffirmed the Company's fiscal 2023 guidance of a diluted EPS range of $2.70 to $3.10. Defendant Duda was quoted in the 1Q23 Release as stating, in pertinent part:

> Our sales into electric vehicle applications continued to be impacted by events in China but are still poised to reach a record milestone of 20% of total sales in fiscal 2023. Overall, we remain on track to deliver our sales and earnings guidance for fiscal 2023.

47.     On September 1, 2022, the Individual Defendants caused Methode to hold an earnings conference call with analysts and investors to discuss Methode's first fiscal quarter 2023 results hosted by Defendants Duda and Tsoumas. In his prepared remarks, Defendant Duda stated that Methode was positioned to "deliver sales and earnings growth for fiscal 2023."

48.     Similarly, during the call, Defendant Tsoumas stated that "based on the strong bookings we realized over the past 2 fiscal years, much of which is for the EV market, we

announced a 3-year organic compounded annual growth rate of approximately 6%," and he assured investors that this CAGR "considers the anticipated roll-off of relevant programs and reinforces that our organic growth strategy is putting the company on a solid future growth trajectory."

49. On September 1, 2022, the Individual Defendants caused Methode to file with the SEC a Form 10-Q for the first fiscal quarter of 2023 and the period ending July 30, 2022, which was signed by the Individual Defendants. The Form 10-Q contained the financial information regarding Methode's first fiscal quarter 2023 financial results contained in the 1Q23 Release.

50. On December 1, 2022, the Individual Defendants caused Methode to issue a press release announcing the Company's financial results for its second fiscal quarter of 2023 (the "2Q23 Release"). The 2Q23 Release stated that the Automotive Segment had $196.9 million in net sales and $23.4 million in income from operations for the quarter. The 2Q23 Release updated the Company's fiscal 2023 guidance to a diluted EPS range of $2.70 to $2.90. Defendant Duda was quoted in the release as stating: "Methode delivered sequential earnings improvement over the first quarter and booked another strong quarter of EV program awards."

51. On December 1, 2022, the Individual Defendants caused Methode to hold an earnings conference call with analysts and investors to discuss Methode's second fiscal quarter 2023 results hosted by Defendants Duda and Tsoumas. In his prepared remarks, Defendant Duda stated that the Company "had another solid quarter for business awards" that would "represent $66 million in annual sales at full production" as "EV continues to be a solid growth engine for Methode." Defendant Duda also reaffirmed the 3-year organic sales CAGR target of 6%, asserting that "[t]his target demonstrates that our business model is not just healthy, but as prospering from the strategic steps that we have taken to grow the business."

52. In his opening remarks, Defendant Tsoumas similarly stated that, "based on the strong bookings we have realized over the past 2 fiscal years, much of which is for the EV market, we previously announced a 3-year organic sales compounded annual growth rate target of 6%," which "considers the anticipated roll-off of all relevant programs and reinforces that our organic growth strategy is putting the company on a solid sales trajectory."

53. On December 1, 2022, the Individual Defendants caused Methode to file with the SEC a Form 10-Q for the second fiscal quarter of 2023, the period ending October 29, 2022, which was signed by the Individual Defendants. The Form 10-Q contained the financial information regarding Methode's second fiscal quarter 2023 financial results contained in the 2Q23 Release.

54. The above statements in ¶¶ 40-56 were materially misleading because they failed to disclose: (1) that the Company had lost highly skilled and experienced employees during the COVID-19 pandemic necessary to successfully complete the Company's transition from its historic low mix, high volume production model to a high mix, low production model at its Monterrey facility; (2) that the Company's attempts to replace its GM center console production with more diversified, specialized products for a wider array of vehicle manufacturers and OEMS, in particular in the EV space, had been plagued by production planning deficiencies, inventory shortages, vendor and supplier problems, and, ultimately, botched execution of the Company's strategic plans; (3) that the Company's manufacturing systems at its critical Monterrey facility suffered from a variety of logistical defects, such as improper system coding, shipping errors, erroneous delivery times, deficient quality control systems, and failures to timely and efficiently procure necessary raw materials; (4) that the Company had fallen substantially behind on the launch of new EV programs out of its Monterrey facility, preventing the Company from timely receiving revenue from new EV program awards; and (e) that, as a result of the foregoing, the

Company was not on track to achieve the 2023 diluted EPS guidance or the 3-year 6% organic sales CAGR represented to investors and such estimates lacked a reasonable factual basis.

**C.  The Truth Begins to Emerge While the Individual Defendants Continue to Issue Materially Misleading Financial Statements**

55.  On March 9, 2023, the Individual Defendants caused Methode to issue a release announcing the Company's financial results for its third fiscal quarter of 2023 (the "3Q23 Release"). As stated in the 3Q23 Release, the Company lowered its 2023 diluted EPS guidance to a range of $2.50 to $2.60 (down from $2.70 to $2.90). The 3Q23 Release further stated that the Automotive Segment achieved $176.5 million in net sales and $18.7 million in income from operations for the quarter. A March 10, 2023 Jefferies analyst report blamed the miss in part on "likely EV pushouts," stating that "customer production ramp delays will likely weigh on timing of sales contribution." The 3Q23 Release further stated that the Automotive Segment achieved $176.5 million in net sales and $18.7 million in income from operations for the quarter.

56.  On that same day, the Individual Defendants caused Methode to hold an earnings call with analysts and investors to discuss Methode's third fiscal quarter 2023 results hosted by Defendants Duda and Tsoumas. In his opening remarks, Defendant Duda stated that the Company had "a very strong pipeline in front of us" and "again reaffirmed our 3-year organic sales compound annual growth rate of 6%, demonstrating that we are on track to organically grow the business." Although he acknowledged near-term challenges, Defendant Duda did not disclose the issues facing the Monterrey facility and claimed that the "path to [the 6% sales CAGR] target will not be linear," thereby indicating that the Company would make up for the miss in subsequent quarters. Defendant Duda further stated that new EV program awards received by the Company will "not only replace the sunsetting center console business, but to grow the business at the [6% sales CAGR] that we have targeted."

17

57.     In particular, Defendant Duda highlighted the revamping of the Company's manufacturing facilities, which included the Monterrey facility. He stated that "[t]o support these new and diverse set of customer programs, many of which are for EV applications, we will be making investments and launching over 20 new programs in fiscal 2024." Defendant Duda added that "[t]hese investments include significant tooling and increased staffing" at the Company's plants.

58.     In his prepared remarks, Defendant Tsoumas similarly stated that the 3-year organic sales CAGR target of 6% "will mainly occur in fiscal year 2025." Further, Defendant Tsoumas asserted that Methode's "strong pipeline of awards . . . will enable us not to only replace the center console programs, but grow the business at the 6% rate we have targeted" and "support our organic growth target for fiscal year '25." Later, in response to an analyst question about the Company's EV backlog, Defendant Tsoumas stated: "[W]e're investing for this organic growth in all 3 major locations . . . to support the OEMs in different locations. So in a lot of ways, that's a really good thing for us to have that [capability]." Defendant Duda added: "And [that's] one of the factors on why we're booking business."

59.     On this news, the Company's stock price fell $3.92 or 8.23%, to close at $43.69 on March 9, 2023.

60.     On June 12, 2023, the Individual Defendants caused Methode to issue a press release announcing preliminary 2023 financial results. The release stated that the Company expected to report below-range annual diluted EPS of just $2.10 to $2.14 (compared to guidance of $2.50 to $2.60, which had already been lowered from initial projections). The release also provided preliminary fiscal 2024 net sales guidance of $1.15 billion to $1.2 billion and diluted EPS of $1.55 to $1.75, signaling continued deterioration "due to additional costs to support new

program launches and the impact from program roll-offs," among other factors. The release further provided preliminary 2025 net sales guidance of $1.25 billion to $1.35 billion, which was below the Company's recently reaffirmed 6% 3-year sales CAGR. On this news, the Company's stock price fell $8.17 or 18.1%, to close at $36.90 per share on June 13, 2023, on unusually heavy trading volume.

61.    On June 22, 2023, the Individual Defendants caused Methode to issue a press release announcing the Company's financial results for its fourth fiscal quarter and full year 2023 ("4Q/FY23 Release"). The release stated that the Company had actually achieved only $1.18 billion in net sales – below the preliminary results provided just ten days before – and diluted EPS of only $2.10, the bottom of the preliminary range. Again, the release blamed the poor results and dismal guidance in substantial part on adverse impacts from program roll-offs and new program launches.

62.    The 4Q/FY23 Release stated that the Automotive Segment achieved $186.2 million in net sales and $10.2 million in income from operations for the quarter. For fiscal 2023, the release stated that the Company achieved $1.179 billion in consolidated net sales and $77.1 million in net income. The release also provided fiscal 2024 net sales guidance of $1.15 billion to $1.2 billion and diluted EPS of $1.55 to $1.75, and fiscal 2025 net sales guidance of $1.25 billion to $1.35 billion, with 2025 income from operations in a range of 11% to 12% of net sales. Defendant Duda was quoted in the release as stating: "'The main highlight of the quarter was new awards of over $250 million, with over 80% being in EV applications. We have now won $600 million in EV awards over the past three years.'" He continued in pertinent part:

> "As our business continues to transition away from user interface towards more lighting and power solutions, ***our fiscal 2024 will see significant investment to support over 20 new program launches***. This transition investment combined with the impact of legacy program rolls offs will cause us to see lower earnings in fiscal

2024. ***However, the strong award pipeline along with an expected rebound in the commercial vehicle, data center and e-bike markets will position us to deliver significant organic sales and earnings growth in fiscal 2025 over fiscal 2024***."

63.     On the same day, the Individual Defendants caused Methode to hold an earnings call with analysts and investors to discuss Methode's fourth fiscal quarter and full year 2023 results hosted by Defendants Duda and Tsoumas. In his opening remarks, Defendant Duda stated Methode had a "very strong quarter with over $250 million in annual program awards," dominated by EV programs in the United States. He added that "[t]he strength of our bookings gives me confidence that . . . we will achieve the margin expansion that supports our guidance for fiscal 2025." He also stated that while "the net of program roll-offs and program launches" is a sales headwind in fiscal 2024, it will be a sales tailwind by fiscal 2025, with the net result being "an 11% organic sales growth rate from fiscal 2024 to fiscal 2025." Defendant Duda continued:

> With the strong award pipeline for the past 3 years and the effort Methode has made to transition its product portfolio . . ., this fiscal 2025 guidance demonstrates that our business model is healthy and is positioned to prosper from the strategic steps that we've taken to grow the business.

He added that Methode was "making significant investments and launching over 20 new programs," which, "along with multiple years of strong awards, will enable us not only to replace the sunsetting programs, but to organically grow the business 11% from fiscal 2024 to [f]iscal 2025."

64.     Later during the call, defendants were asked to describe the costs of the new product launches and efforts underway to retool the Company's factories. Defendant Duda responded that the costs had already been factored into guidance and indicated upgrades were proceeding according to plan, stating in pertinent part:

> It is equipment, it is people, it is prototyping costs that we're starting to incur and we'll continue to incur throughout fiscal 2024. As we get into the end of '24, those costs will start to be absorbed into the product launches. ***So factored into the guidance, and we will – we are starting – we've been hiring. We've been***

*procuring equipment. The plant is probably 30% complete from an equipment standpoint*. So that will continue throughout the year, and then we will be launching a lower volume at the end of the year. That's not a significant amount, but it will start to absorb the costs.

65.     On this news, the Company's stock price fell $3.48 or 9.28%, to close at $34.04 per share on June 22, 2023, on unusually heavy trading volume.

66.     On August 31, 2023, the Individual Defendants caused Methode to announce that Defendant Duda would be retiring from his positions as a director, President, and CEO.

67.     On September 7, 2023, the Individual Defendants caused Methode to issue a press release announcing the Company's financial results for its first fiscal quarter of 2024 (the "1Q24 Release"). The release stated that "operational inefficiencies" in the Company's North American operations and accelerated expenses related to new program launches had negatively impacted earnings for the quarter and were expected to linger into the second quarter. The operational issues included both labor and vendor problems and had led to planning deficiencies, inventory shortages, unrecoverable spot purchases, premium freight, and delayed shipments. The 1Q24 Release also lowered expected 2024 net sales to a range of $1.14 billion to $1.18 billion (down from $1.15 billion to $1.2 billion) and slashed expected diluted EPS to a range of $0.80 to $1 (down from $1.55 to $1.75).

68.     On the same day, the Individual Defendants caused Methode to hold an earnings call with analysts and investors to discuss Methode's first fiscal quarter 2024 results hosted by Defendants Duda and Tsoumas. Defendant Duda gave the following explanation of the issues:

Our Monterrey operation has historically manufactured with a low mix and a high volume of product. Recently, the operation has transitioned into a mode of higher mix and lower volume. This transition, combined with the aforementioned issues, led to exposure of latent operating inefficiencies that our early warning detected but we failed to mitigate, also very un-Methode.

In the lean manufacturing environment, a delay in visibility of a problem can ultimately generate significant costs in the form of premium freight and spot

21

buying, both necessary to immediately address material shortages and maintain customer delivery integrity. In auto, delivery in addition to quality is absolutely paramount to both maintaining and obtaining new business. These operational challenges had an approximately $0.15 impact on our first quarter earnings relative to our expectations. We also had accelerated expenses related to the numerous program launches. . . .

However, the residual effects are expected to impact our second quarter to approximately the same degree, and along with a significant weakening in the e-bike market are the primary drivers to our lowering earnings guidance for the full year.

69.     The 1Q24 Release stated that the Automotive Segment generated $158.3 million in net sales and a $2.8 million loss from operations for the quarter. The release also provided fiscal 2024 net sales guidance of $1.14 billion to $1.18 billion and diluted EPS of $0.80 to $1 and fiscal 2025 net sales guidance of $1.25 billion to $1.35 billion, with 2025 income from operations in a range of 11% to 12% of net sales. Defendant Duda was quoted in the release as stating that the operational challenges suffered at the Monterrey facility "'have been identified and corrective action plans are already in place.'" He continued in pertinent part:

 [W]e remain on track with the 20-plus new program launches that we previously announced. In addition, the award pipeline along with an expected rebound in the commercial vehicle, data center and e-bike markets continue to position us for significant organic sales and earnings growth in fiscal 2025 over fiscal 2024, and our guidance for fiscal 2025 remains unchanged.

70.     In his opening remarks on the September 7, 2023 earnings call, Defendant Duda stated that the operational challenges in the Monterrey facility "have been identified and corrective action plans are already in place." He also assured investors that he would be "personally involved with the efforts to correct the situation . . . we will fix this." Defendant Duda further stated that the Company "will be making significant investments in launching over 20 new programs," which "include significant tooling and increased staffing to ensure a successful 2025" and "is expected to enable us to not only replace the sunsetting programs but to organically grow the business 12% from fiscal 2024 to fiscal 2025." Defendant Duda stated that "our view on fiscal 2025 has not

changed." He concluded his opening remarks: "I am extremely confident that the company will continue to flourish given the exceptional team in place and the solid strategy that is positioned for growth."

71.     During the question-and-answer session, Defendant Duda stated that he was "very confident that they're going to see an uptick in their business" and claimed that the Monterrey plant "will have more volume through it than it had even in the center console days." Defendant Duda also stated that the transition away from reliance on GM had made the Company "more secure" and represented that the Company's sales had "not at all" been impacted by the operational issues.

72.     On this news, the Company's stock price fell $6.67 or 22.23%, to close at $23.33 per share on September 7, 2023, on unusually heavy trading volume. Individual Defendants, however, continued to conceal the full truth about the problems the Company was then experiencing at the Monterrey facility, among other issues. As a result, the price of Methode common stock remained artificially inflated.

73.     Then, on December 7, 2023, the Individual Defendants caused Methode to issue a release announcing the Company's financial results for its second fiscal quarter of 2024 (the "2Q24 Release"). The release revealed that the Automotive Segment had generated only $154.3 million in net sales and suffered a $61.5 million loss from operations during the quarter. The release also lowered the Company's 2024 diluted EPS guidance to a range of negative $1.40 to negative $1.14 (down from $0.80 to $1). The release similarly lowered Methode's 2025 revenue guidance to $1.15 billion to $1.25 billion (down from $1.25 billion to $1.35 billion) and its expected 2025 income from operations to a range of 6% to 8% as a percentage of net sales (down from the prior range of 11% to 12%). The release further revealed that the operational challenges at the Company's

Monterrey facility were far greater than previously reported and expected to impact the second half of the fiscal year, as the Company's vaunted EV awards suffered launch setbacks and significant cost overruns. The release also disclosed a $56.5 million goodwill impairment in the Company's North American and European Automotive Reporting Units.

74.     On the same day, the Individual Defendants caused Methode to hold an earnings call with analysts and investors to discuss Methode's second fiscal quarter 2024 results hosted by Defendants Duda and Tsoumas. Defendant Duda admitted that the operational deficiencies ***"probably existed prior to this fiscal year"*** and indeed extended back to the "end of COVID" when "a certain amount of knowledge" had departed the Company with personnel turnover. He described the issues in pertinent part:

> I was overly optimistic. There, it is taking us longer to go through the various routings and part numbers and make corrective actions. To give you more color around that, these issues probably existed prior to this fiscal year, but they were masked by very high inventory in certain areas.

> And we took, as normally we do, when we try to lean out our operations, we brought inventory down. And that – one of the analogy is that the lean experts sometimes uses the pond and he lowers the pond, you find the rocks. Well, we found boulders. And it took us much longer, it is taking much longer to correct.

> They're all, as I said, all fixable, but it's a mismatch between our various systems. We do manufacture product in Dongguan, China that ship to Monterrey.

> The engineering changes weren't recorded properly and we said, a lot of it was due to salary personal [sic] turnover, that there was a certain amount of knowledge that probably got lost at end of COVID.

> So it's really dealing with routings, MRP, lead time. And we have some lead times in the system at two weeks when it probably should have been closer to two months. Also, there – we saw changing. And then I don't know if this is a COVID leftover, but we're seeing some tremendous changes in schedule, something that we have not seen much in the past and that also puts a stress on the system.

>                   *                 *                 *

> And I was probably always a lag on some of the invoicing, you don't get invoiced next week for premium shipments and there's probably some of that occurred in

the first quarter that carried over in the second quarter. Again, all fixable. It's as we underestimated the amount of time.

75.     During his prepared remarks on the December 7, 2023 earnings call, Defendant Duda stated: "[W]e're decisively making the investments in fiscal '24 to ensure profitable growth in fiscal '25" and "firmly believe that our business model is healthy and is positioned to prosper from the strategic direction that we have taken in the lighting and power solutions to grow the business."

76.     On this news, the Company's stock price fell $2.26 or 9.27%, to close at $22.13 per share on December 7, 2023, on unusually heavy trading volume. Individual Defendants, however, continued to conceal the full truth about the problems the Company was then experiencing at the Monterrey facility, among other issues. As a result, the price of Methode common stock remained artificially inflated.

**D.     The Truth Fully Emerges**

77.     On March 7, 2024, the Individual Defendants caused Methode to issue a release announcing the Company's financial results for its third fiscal quarter of 2024. The Automotive Segment generated only $139.7 million in net sales for the quarter and suffered an $11 million loss from operations. The release withdrew all of Methode's prior guidance due in substantial part to the "operational challenges" at the Monterrey facility and stated that defendants' prior statements regarding the guidance should no longer be relied upon. The release further announced urgent actions being taken by the Company to reduce costs, such as by reducing headcount and discretionary expenses and by disposing of non-critical assets.

78.     On the same day, Methode held an earnings call with analysts and investors hosted by new CEO Avinash Avula ("Avula"), who had replaced Defendant Duda. In his opening remarks, Avula stated that sales for the quarter were down $21 million year-over-year "entirely

[attributable to] our Auto segment." Avula further stated that the "lower sales, along with the continued operational inefficiencies in North American auto operations drove the net loss in the quarter." Defendant Tsoumas similarly noted a litany of issues still negatively impacting the Company's Monterrey facility, including "high labor turnover, planning issues, leading to inventory shortages, leading to expedited incoming freight, and sometimes outgoing freight, some short shipping premium freight, inbound and spot purchases where our planning isn't fully vetted."

79.     On this news, the Company's stock price fell $6.55 or 31.1%, to close at $14.49 per share on March 7, 2024, on unusually heavy trading volume.

80.     Thereafter, on April 8, 2024, Methode announced that Defendant Tsoumas would be retiring from the Company effective July 12, 2024. Less than one month later, on May 6, 2024, Methode announced that Avula had resigned just three months into his role as CEO.

## VI.     DAMAGES TO THE COMPANY

81.     As a direct and proximate result of the Individual Defendants' conduct, Methode has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

a)      Any funds paid to settle the Securities Class Action; and

b)      Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Methode.

82.     In addition, Methode's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

83.     The actions complained of herein have irreparably damaged Methode's corporate image and goodwill. For at least the foreseeable future, Methode will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in

illegal behavior and have misled the investing public, such that Methode's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

84.     Plaintiff brings this action derivatively in the right and for the benefit of Methode to redress injuries suffered, and to be suffered, by Methode as a direct result of the wrongdoing alleged herein.  Methode is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

85.     Plaintiff will adequately and fairly represent the interests of Methode in enforcing and prosecuting its rights.

86.     Plaintiff has continuously been a shareholder of Methode at times relevant to the wrongdoing complained of and is a current Methode shareholder.

87.     When this action was filed, Methode's Board of Directors consisted of defendants Dawson, Cadwallader, Schwabero, Crowther, Pantaleo, Lindsey, Bobek, and Goddard, and non-party David P. Blom. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

88.     Lindsey, Schwabero, Pantaleo, Bobek, and Goddard, also served as members of the Audit Committee at relevant times. As such they are responsible for the integrity of Methode's financial statements. In their capacities as Audit Committee members, Lindsey, Schwabero, Pantaleo, Bobek, and Goddard, reviewed and approved the materially misleading statements and allowed them to be disseminated in Methode's SEC filings and other disclosures. Thus, Lindsey, Schwabero, Pantaleo, Bobek, and Goddard, breached their fiduciary duties and are not disinterested, and demand is excused as to them.

89.     The entire Board is charged with overseeing the Company's affairs, including the Company's Automotive Segment.  Methode's Automotive Segment generates the majority of the

Company's revenues. Therefore, the entire Board knew or should have known of the material facts concerning this business, including that the Company was not on track to achieve the 2023 diluted EPS guidance or the 3-year 6% organic sales CAGR represented to investors and that such estimates lacked a reasonable factual basis.

90.    In their capacities as officers, directors, and/or fiduciaries, Duda, Tsoumas, Dawson, Cadwallader, Schwabero, Crowther, Pantaleo, Lindsey, Bobek, Goddard, Skatoff, and Aspatore issued materially misleading statements, including the 2022 10-K, and face a substantial likelihood of liability.

## FIRST CLAIM FOR RELIEF

### Against the Individual Defendants for Breach of Fiduciary Duty

91.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

92.    The Individual Defendants each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Methode's business and affairs, particularly with respect to issues as fundamental as public disclosures.

93.    The conduct by the Individual Defendants set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Methode.

94.    In breach of their fiduciary duties owed to Methode, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

95.     In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report Company's overall prospects.

96.     As a direct and proximate result of the breaches of their fiduciary obligations by the Individual Defendants, Methode has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Methode, demands judgment as follows:

A.     Declaring that Plaintiff may maintain this action on behalf of Methode and that plaintiff is an adequate representative of the Company;

B.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.     Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Methode;

D.     Directing Methode to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Methode and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.     a proposal to strengthen the Company's controls over financial reporting;

2.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.      a proposal to strengthen Methode's oversight of its disclosure procedures;

4.      a provision to control insider transactions; and

5.      a provision to permit the stockholders of Methode to nominate at least three candidates for election to the Board;

E.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Methode has an effective remedy;

F.      Awarding to Methode restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: November 26, 2024

*/s/ Carl V. Malmstrom*
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER**
      **FREEMAN & HERZ LLC**
111 West Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
E-mail: malmstrom@whafh.com

Benjamin I. Sachs-Michaels
**GLANCY PRONGAY & MURRAY LLP**

745 Fifth Avenue, Fifth Floor
New York, New York 10151
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

Robert V. Prongay
Pavithra Rajesh
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com
       prajesh@glancylaw.com

Lesley F. Portnoy
**PORTNOY LAW FIRM**
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
(310) 692-8883

*Counsel for Plaintiff Ray Homsi*

## **VERIFICATION**

I, Ray Homsi, do hereby verify that I am a holder of stock of Methode Electronics, Inc., and was a holder of such stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint").  I have authorized the filing of the Complaint. I have reviewed the Complaint.  All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.


Date: 11/20/2024

DocuSigned by:

*Ray Homsi*

57D2803ACFF5488...

Ray Homsi